# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

# BECKLEY DIVISION

ZOANNE MILDRED COCHRAN,

    Plaintiff,

v.                                                           CIVIL ACTION NO. 5:20-cv-00472

ANDREW SAUL,
Commissioner of Social Security,

    Defendant.

## PROPOSED FINDINGS & RECOMMENDATION

Plaintiff Zoanne Mildred Cochran ("Claimant") seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–33. (ECF No. 2.) By standing order entered on January 4, 2016, and filed in this case on July 13, 2020, this matter was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 3.) Presently pending before this Court are Claimant's Brief in Support of Judgment on the Pleadings (ECF No. 14) and the Commissioner's Brief in Support of Defendant's Decision (ECF No. 15).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Claimant's request to reverse the Commissioner's decision (ECF No. 14), **GRANT** the

Commissioner's request to affirm his decision (ECF No. 15), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the Court's docket.

## I. BACKGROUND

### A. *Information about Claimant and Procedural History of Claim*

Claimant was 53 years old at the time of her alleged disability onset date and 55 years old on the date of the decision by the Administrative Law Judge ("ALJ"). (*See* Tr. at 196.)[1] She is a college graduate. (*Id.* at 200.) Most recently, she worked as an elementary school teacher. (*Id.* at 200–01.) Claimant alleges that she became disabled on June 1, 2017, due to osteoarthritis in her ankles and feet, "Morton neuroma left foot," "Plantar fasciitis heel spur, bilateral," "Lower back pain," atrial fibrillation, and "Atrial flutter." (*Id.* at 196, 199.)

Claimant protectively filed her application for benefits on November 20, 2017. (*Id.* at 15, 156–62.) Her claim was initially denied on January 29, 2018, and again upon reconsideration on May 29, 2018. (*Id.* at 84–88, 93–95.) Thereafter, on June 19, 2018, Claimant filed a written request for hearing. (*Id.* at 98–99.) An administrative hearing was held before an ALJ on June 11, 2019, in Mount Hope, West Virginia, with the ALJ appearing from Charleston, West Virginia. (*Id.* at 33–59.) On June 28, 2019, the ALJ rendered an unfavorable decision. (*Id.* at 12–32.) Claimant then sought review of the ALJ's decision by the Appeals Council on July 3, 2019. (*Id.* at 152–55.) The Appeals Council denied Claimant's request for review on May 21, 2020, and the ALJ's decision became the final decision of the Commissioner on that date. (*Id.* at 1–6.)

Claimant timely brought the present action on July 10, 2020, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2.) The

---

[1] All references to "Tr." refer to the Transcript of Proceedings filed in this action at ECF No. 11.

Commissioner filed an Answer (ECF No. 10) and a transcript of the administrative proceedings (ECF No. 11). Claimant subsequently filed her Brief in Support of Judgment on the Pleadings (ECF No. 14), and in response, the Commissioner filed his Brief in Support of Defendant's Decision (ECF No. 15). As such, this matter is fully briefed and ready for resolution.

### B. Relevant Medical Evidence

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and summarizes it here for the convenience of the United States District Judge.

#### 1. Treatment for Ankle and Foot Conditions During Relevant Period

The day after her alleged onset date, on June 2, 2017, Claimant presented to her primary care physician, complaining of pain in her feet. (Tr. at 353.) She reported that her pain was "worse . . . with prolonged standing or ambulation." (*Id.* at 355.) The primary care physician did not note any abnormal findings in Claimant's feet upon physical examination. (*Id.*) About a month later, on July 6, 2017, Claimant presented to her podiatrist and complained of "foot pain characterized as burning, cramping, dull aching and pulling being located on the bottom of both feet." (*Id.* at 325.) Upon physical examination, the podiatrist observed pain on palpation of the medial tubercle but no pain with lateral compression. (*Id.*) Claimant was diagnosed with plantar fasciitis. (*Id.*)

When Claimant returned to her podiatrist on November 9, 2017, she stated that her "foot pain is slowly worsening from previous visit." (*Id.* at 323.) A physical examination revealed bilateral pitting edema, pain on palpation and decreased, painful range of motion of the ankles, and pain on palpation of the medial tubercle but no pain with lateral compression. (*Id.*) Claimant was diagnosed with degenerative joint disease

of the ankles and feet. (*Id.* at 324.) Around six weeks later, on December 28, 2017, Claimant presented to her podiatrist and again related that her "foot pain is unchanged from previous visit." (*Id.* at 436.) A physical examination was also the same. (*Id.*) The podiatrist remarked that Claimant's degenerative joint disease of the ankle "symptoms improved with bracing, but still painful if too active." (*Id.* at 438.)

Claimant next presented to her podiatrist on April 30, 2018, and continued to complain of foot and ankle pain. (*Id.* at 434.) Upon physical examination, the podiatrist observed pain on palpation and decreased, painful range of motion of the ankles. (*Id.*) The podiatrist noted that Claimant's degenerative joint disease of the ankle "symptoms are better, but still remains painful when active." (*Id.* at 435.) He recommended pain injections. (*Id.*)

When Claimant returned to her podiatrist nearly a year later on February 4, 2019, she reported that she was still experiencing ankle pain, although it was unchanged, and worsening foot pain. (*Id.* at 533.) Upon physical examination, the podiatrist observed pain on palpation and decreased, painful range of motion in Claimant's ankles, and a Tinnel's sign was positive bilaterally. (*Id.*) Claimant was instructed to "continue bracing" and was referred to a neurologist for an evaluation for potential neuritis. (*Id.*) She presented to the neurologist on March 12, 2019, "for evaluation of lower extremity paresthesias and concern for neuropathy." (*Id.* at 519.) Claimant told the neurologist that "over the last year or so she's had more dysesthesias and allodynia and her ankles down to her toes. She says socks feel uncomfortable touching her skin. She also describes feeling discomfort from the bedsheets touching her feet." (*Id.*) A physical examination was normal aside from "mildly reduced" sensation "to vibration bilaterally." (*Id.*) A nerve conduction study "showed no evidence for large fiber neuropathy or lumbosacral

radiculopathy." (*Id.* at 520.) Claimant was diagnosed with polyneuropathy and dorsalgia and prescribed pain medication. (*Id.* at 519–20.) The neurologist also ordered imaging of her lumbosacral spine and physical therapy. (*Id.* at 520.) Shortly afterward, on March 28, 2019, Claimant presented to her podiatrist and reported that her "ankle pain is unchanged from previous visit." (*Id.* at 531.) A physical examination revealed pain on palpation of both ankles. (*Id.*) Claimant was instructed to "continue bracing." (*Id.*)

    2. Opinion Evidence

        a. Podiatrist

On November 20, 2017, Claimant's podiatrist completed a portion of her application for long-term disability insurance benefits. (*Id.* at 446–47.) He stated that she was diagnosed with degenerative joint disease of the feet and ankles and plantar fasciitis, and he noted that she complained of pain when walking and that he observed swelling upon physical examination. (*Id.* at 446.) When asked about her abilities to sit, stand, and walk "[i]n a general workplace environment," the podiatrist circled "Sit" and did not circle "Stand" or "Walk." (*Id.* at 447.) He explained, "Standing/walking may need to be limited, however able to sit unless other problem outside my scope." (*Id.*) He opined that she would not be restricted in her abilities to lift and carry up to twenty pounds, could occasionally lift and carry up to fifty pounds, and could never lift and carry more than fifty pounds. (*Id.*) He further opined that she had no restrictions in her abilities to bend at the waist, kneel, crouch, crawl, and finger and handle. (*Id.*) When asked to explain the duration of Claimant's limitations, he answered, "Chronic nature of problem, will likely stay the same or get worse." (*Id.*)

The following month, on December 28, 2017, Claimant's podiatrist completed a "progress report" form at the request of her long-term disability insurer. (*Id.* at 608–09.)

5

He noted that she complained of bilateral ankle and heel pain and that she was treated with "bracing" and orthotics. (*Id.* at 608.) He opined that Claimant could not stand and walk, explaining, "prolonged standing/walking will make symptoms worse." (*Id.* at 609.) He also wrote that her status was unchanged and was "unlikely to improve, progressive nature." (*Id.*)

Claimant's podiatrist completed another "progress report" form at the request of her long-term disability insurer on April 30, 2018. (*Id.* at 444–45.) He again noted that she had been diagnosed with degenerative joint disease of the ankles and plantar fasciitis and that she complained of "pain in both ankles and heels." (*Id.* at 444.) He also noted that she was treated with "bracing." (*Id.*) When asked about her abilities to sit, stand, and walk, the podiatrist marked the box that she could sit "[c]ontinuously with standard breaks," but he did not mark any boxes for standing or walking. (*Id.* at 445.) He elaborated, "from podiatry standpoint, able to sit, prolonged standing and walking, however, will aggravate symptoms." (*Id.*) He opined that she could never kneel, crouch, climb, or balance and could occasionally lift up to five pounds. (*Id.*) When asked about the duration of these limitations, the podiatrist wrote that they were permanent and that her condition was unchanged. (*Id.*)

The podiatrist completed another form at the request of Claimant's long-term disability insurer on May 10, 2018. (*Id.* at 442–43.) When asked how long Claimant could sit, stand, and walk during an eight-hour workday, he responded that she could sit for eight hours at once for a total of eight hours per day but could never stand or walk. (*Id.* at 442.) When asked to "provide [his] medical rationale for the recommended restrictions," he wrote, "[Degenerative joint disease] in both ankles limit [sic] walking [and] standing, able to sit from podiatry perspective." (*Id.* at 443.)

6

On June 14, 2018, Claimant's podiatrist completed a form at the request of her long-term disability insurer. (*Id.* at 440–41.) Again, the podiatrist did not respond to the question asking how long she could stand and walk during an eight-hour workday. (*Id.* at 441.) He wrote, "As I do not know her tolerance, I am unable to quantify an exact number of minutes standing/walking [with] or [without] breaks[. P]atient has significant [degenerative joint disease], any walking or standing will aggravate pathology to varying degrees, but I cannot specify exact quantity." (*Id.* at 440.)

Claimant's podiatrist completed another "progress report" form at the request of her long-term disability insurer on February 25, 2019. (*Id.* at 612–13.) He opined that she could sit continuously for eight hours and stand and walk "[i]ntermittently with standard breaks." (*Id.* at 613.) He explained, "standing/walking will aggravate condition[.] Sitting will not affect podiatry related conditions." (*Id.*) He also opined that she could never climb because it "will aggravate condition." (*Id.*)

The podiatrist also completed a "progress report" form at the request of Claimant's long-term disability insurer for the office visit dated March 28, 2019. (*Id.* at 614–15.) He stated that she had been diagnosed with degenerative joint disease of the ankles and feet and complained of pain in her feet and ankles. (*Id.* at 614.) He also noted objective physical findings of decreased range of motion and pain on palpation of the ankles. (*Id.*) He remarked that she continued to be treated with "Bracing of both ankles." (*Id.*) The podiatrist opined that Claimant could sit "[c]ontinuously with standard breaks" but could never stand, walk, bend at the waist, kneel, crouch, climb, balance, drive, or lift. (*Id.* at 615.) He wrote that Claimant's condition was unchanged and would endure for an "indefinite" period. (*Id.*)

### b. *Neurologist*

Claimant's neurologist completed a "progress report" form at the request of her long-term disability insurer on May 20, 2019. (*Id.* at 622–23.) He wrote that she was diagnosed with polyneuropathy and dorsalgia and complained of lower extremity numbness, tingling, burning, "pinpricking" sensations, and lack of sensation. (*Id.* at 622.) He also wrote that he observed reduced vibration sensation in the bilateral lower extremities at her May 17, 2019 appointment. (*Id.*) The neurologist opined that Claimant could sit for up to two hours at a time for a total of six hours and stand and walk for up to fifteen minutes at a time for a total of one hour in an eight-hour workday due to her "lower extremity pain and imbalance." (*Id.* at 623.) He also opined that she could never bend at the waist, kneel, crouch, climb, balance, or reach; occasionally drive and lift up to ten pounds; and frequently perform fine and gross manipulation. (*Id.*) The neurologist wrote that Claimant's condition was unchanged and that these limitations would be "lifelong." (*Id.*)

### c. *State-Agency Medical Consultants*

The state-agency medical consultant at the initial determination level opined that Claimant could lift and carry twenty pounds occasionally and ten pounds frequently, sit for six hours in an eight-hour workday, and stand or walk for six hours in an eight-hour workday. (*Id.* at 67.) He further opined that she could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl but never climb ladders, ropes, or scaffolds. (*Id.* at 68.) He also opined that she had no manipulative, visual, or communicative limitations. (*Id.*) Finally, he opined that she should avoid concentrated exposure to extreme cold, wetness, and vibration. (*Id.*) He explained,

> Claimant w/Class II obesity. Has a [history of] paroxysmal [atrial fibrillation]. No major cardiac compromise. No repeated syncope. Does not meet/equal listing. Has some degen[erative] changes to [lumbar] spine. Also [with medically determinable impairment] of plantar fasciitis . . . . Mild to mod[erate] [lumbar] spine [range of motion] limitation. [Normal range of motion] elsewhere. Gait/station and neuro [normal]. Overall, claimant suitable for light exertional levels. Would never climb ladders. Rest of posturals to occasional. Would avoid concentrated extreme cold/wetness/vibration.

(*Id.* at 69.) The state-agency medical consultant at the reconsideration level affirmed these findings, writing, "On [reconsideration] No New significant evidence. RFC above does not change. [Medical evidence of record] consistent/supportive." (*Id.* at 82.)

C. *Sequential Evaluation Process*

An individual unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" is considered to be disabled and thus eligible for benefits. 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has established a five-step sequential evaluation process to aid in this determination. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). The ALJ proceeds through each step until making a finding of either "disabled" or "not disabled"; if no finding is made, the analysis advances to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The ultimate burden to prove disability lies on the claimant." *Preston v. Heckler*, 769 F.2d 988, 990 n.\* (4th Cir. 1985); *see Bird v. Comm'r of Soc. Sec.*, 699 F.3d

337, 340 (4th Cir. 2012) ("To establish eligibility for . . . benefits, a claimant must show that he became disabled before his [date last insured].").

At the first step in the sequential evaluation process, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the ALJ moves on to the second step.

At the second step, the ALJ considers the combined severity of the claimant's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ gleans this information from the available medical evidence. *See Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements will result in a finding of "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

Similarly, at the third step, the ALJ determines whether the claimant's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (quoting *Bowen v. City of New York*, 476 U.S. 467, 471 (1986)).

"If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity" ("RFC") before proceeding to the fourth step. *Mascio*, 780 F.3d at 635; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e). The

claimant's RFC reflects "her ability to perform work despite her limitations." *Patterson v. Comm'r of Soc. Sec.*, 846 F.3d 656, 659 (4th Cir. 2017); *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (defining claimant's RFC as "the most the claimant can still do despite physical and mental limitations that affect his ability to work" (alterations and internal quotation marks omitted)); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ "first identif[ies] the individual's functional limitations or restrictions and assess[es] his or her work-related abilities on a function-by-function basis," then "define[s] the claimant's RFC in terms of the exertional levels of work." *Lewis*, 858 F.3d at 862. "In determining a claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments . . . including those not labeled severe" as well as "all the claimant's symptoms, including pain, and the extent to which his symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Monroe*, 826 F.3d at 179 (alterations and internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a), 416.945(a).

When the claimant alleges a mental impairment, the first three steps of the sequential evaluation process and the RFC assessment are conducted using a "special technique" to "evaluate the severity of [the] mental impairment[]." 20 C.F.R. §§ 404.1520a(a), 416.920a(a); *see Patterson*, 846 F.3d at 659. Considering the claimant's "pertinent symptoms, signs, and laboratory findings," the ALJ determines whether the claimant has "a medically determinable mental impairment(s)" and "rate[s] the degree of functional limitation resulting from the impairment(s)" according to certain criteria. 20 C.F.R. §§ 404.1520a(b), 416.920a(b); *see id.* §§ 404.1520a(c), 416.920a(c). "Next, the ALJ must determine if the mental impairment is severe, and if so, whether it qualifies as a listed impairment." *Patterson*, 846 F.3d at 659; *see* 20 C.F.R. §§ 404.1520a(d),

416.920a(d). "If the mental impairment is severe but is not a listed impairment, the ALJ must assess the claimant's RFC in light of how the impairment constrains the claimant's work abilities." *Patterson*, 846 F.3d at 659.

After assessing the claimant's RFC, the ALJ at the fourth step determines whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); *Monroe*, 826 F.3d at 180. If she does not, then "the ALJ proceeds to step five." *Lewis*, 858 F.3d at 862.

The fifth and final step requires the ALJ to consider the claimant's RFC, age, education, and work experience in order to determine whether she can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this point, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy.'" *Lewis*, 858 F.3d at 862 (quoting *Mascio*, 780 F.3d at 635). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." *Id*. (quoting *Mascio*, 780 F.3d at 635). If the claimant can perform other work, the ALJ will find her "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If she cannot perform other work, the ALJ will find her "disabled." *Id*.

Applying the sequential evaluation process in this case, the ALJ concluded that Claimant satisfied the insured status requirements and was insured through the date of the decision. (Tr. at 17.) She further determined that Claimant had not engaged in substantial gainful activity since the alleged onset of her disability. (*Id*.) She found that Claimant's degenerative disc disease of the cervical and lumbar spine with spondylosis and sciatic pain; degenerative joint disease in the knees and ankles; plantar fasciitis; heel

spurs; myofascial pain; and history of paroxysmal atrial fibrillation constituted "severe" impairments. (*Id.*) However, she found that those impairments, or a combination thereof, failed to meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 19–20.) Upon assessing Claimant's RFC, the ALJ determined that Claimant is able "to perform light work," except "She can occasionally climb ramps and stairs, but can never climb ladders, ropes or scaffolds" and "can occasionally balance, stoop, kneel, crouch, and crawl." (*Id.* at 20.) She further found that Claimant "must avoid frequent exposure to extreme cold, wetness, vibrations, and workplace hazards such as moving machinery or unprotected heights." (*Id.*)

The ALJ concluded that given the limitations imposed by the Claimant's RFC, she was able to perform her past relevant work as an elementary school teacher "as actually and generally performed." (*Id.* at 25.) As a result, she determined that Claimant was not "under a disability . . . from June 1, 2017, through the date of this decision." (*Id.*)

## II.    LEGAL STANDARD

This Court has a narrow role in reviewing the Commissioner's final decision to deny benefits: it "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and it must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In other words, this Court "looks to [the] administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id.* (alteration omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.*

13

"In reviewing for substantial evidence, [this Court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Johnson*, 434 F.3d at 653 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Even if "reasonable minds [could] differ as to whether a claimant is disabled," this Court upholds the ALJ's decision if it is supported by substantial evidence. *Id.* (quoting *Craig*, 76 F.3d at 589).

### III. ANALYSIS

Claimant argues that the ALJ erred by determining that she is able to stand and/or walk for six hours in an eight-hour workday. (ECF No. 14 at 2–4.) She further asserts that the ALJ improperly evaluated the medical opinion evidence in this case. (*Id.* at 4.) She asks this Court to reverse the Commissioner's decision and award her benefits or to reverse the Commissioner's decision and remand this matter to the ALJ. (*Id.* at 5.) The Commissioner responds that the ALJ's RFC assessment is supported by substantial evidence and that she appropriately rejected the opinions of Claimant's podiatrist and neurologist. (ECF No. 15 at 7–16.)

*A. Abilities to Stand and/or Walk*

Claimant first argues that the ALJ erroneously found that she can perform light work because she "is not capable of performing the prolonged standing and walking contemplated for most light work." (ECF No. 14 at 2–4.) "In the RFC assessment, the ALJ uses all relevant evidence, medical or otherwise, to determine a claimant's 'ability to meet the physical, mental, sensory, and other requirements of work.'" *Ladda v. Berryhill*, 749 F. App'x 166, 172 (4th Cir. 2018) (quoting 20 C.F.R. §§ 404.1545, 416.945). This entails "identify[ing] the individual's functional limitations or restrictions and assess[ing] his or her work-related abilities on a function-by-function basis, including the functions

14

listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (internal quotation marks omitted). The RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* "Thus, a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). Stated another way, "the ALJ must both identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis deleted) (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)).

Claimant suggests that the medical evidence relating to her ankle and foot conditions warrants a finding that she cannot stand and/or walk for six hours in an eight-hour workday. (ECF No. 14 at 3–4.) Although the ALJ did not explicitly mention each piece of evidence Claimant identifies—nor was she required to, *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014)—her thorough review of the medical evidence of record in this case makes clear that she considered these treatment records. However, the ALJ concluded that the entirety of the evidence showed, "There is no evidence, or adverse side effects from treatment or medication, that would prevent the claimant from performing competitive work on a regular and continuous basis. Her care and treatment has been entirely conservative and her condition seems to be stable." (Tr. at 23.) She further stated,

> Regarding the claimant's musculoskeletal complaints, records from [her rheumatologist] characterized her osteoarthritis as mild, stating that it did not significantly limit her mobility. Additionally, the claimant

acknowledged that Celebrex eased her joint discomfort, and reported further improvement subsequent to physical therapy. In fact, the claimant stated that she only took over-the-counter Ibuprofen, and did not even require it on a daily basis. Podiatry records also note conservative treatment with ankle braces. Although she indicated that her foot pain, described as a dull ache, was gradually worsening, she reported no worsening of her ankle pain. The claimant declined further injections in 2019, and requested no pain medication.

(*Id.* (internal citations omitted).) Put simply, the ALJ sufficiently explained her reasons for determining that Claimant's ankle and foot conditions permitted her to stand and/or walk for six hours in an eight-hour workday. Claimant essentially asks this Court to reassess the import of the evidence in this case, which this Court cannot do. *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 383 (4th Cir. 2021) ("In undertaking [substantial evidence] review, it is not our place to 're-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ].'" (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996))). The undersigned **FINDS** that the ALJ's determination that Claimant can stand and/or walk for six hours in an eight-hour workday is supported by substantial evidence.

B. *Opinion Evidence*

Claimant contends that the ALJ erred by favoring the opinions of the state-agency physical consultants over those of his podiatrist and neurologist. (ECF No. 14 at 4.) When determining whether a claimant is disabled, the ALJ is tasked with appraising the persuasiveness of "medical opinions [and] prior administrative medical findings" by considering, first and foremost, their supportability and consistency, in addition to the

medical source's relationship with the claimant and specialization and other factors such as the medical source's "familiarity with the other evidence in the claim or an understanding of [the] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c. In general, the better a medical source explains his opinion with references to objective medical findings and the more consistent that opinion is with the other evidence in the record, the more persuasive the ALJ should find that opinion. *Id.*

As an initial matter, to the extent Claimant suggests that the opinions of her treating physicians are inherently more valuable than those of the state-agency consultants, the regulations applicable to this case do not provide for any special weight for treating physicians' opinions. 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). In addition, to the extent she argues that the ALJ should have rejected the stage-agency consultants' opinions simply because they did not have access to the entire record, she is mistaken. *Pittard v. Berryhill*, No. 2:17-cv-71, 2018 WL 4677831, at *20 (E.D. Va. June 8, 2018) ("[B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it." (quoting *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011))), *adopted by* 2018 WL 4219193 (E.D. Va. Sept. 5, 2018). The ALJ is instead tasked with evaluating "the consistency of state agency consultants' opinions with the record as a whole, including those records post-dating such opinions." *Hunter v. Saul*, No. 1:19-cv-912, 2020 WL 6582497, at *9 (M.D.N.C. Nov. 10, 2020) (emphasis deleted). She did so here, explaining that "the limitations they assigned are consistent

17

with objective imaging and physical examination findings" dating both before and after the state-agency consultants' review of the record. (Tr. at 25 (internal citations omitted).) The undersigned **FINDS** no error in the ALJ's evaluation of the state-agency medical consultants' opinions.

With regard to her podiatrist's and her neurologist's opinions, Claimant again essentially asks this Court to reform the ALJ's analysis in her favor. (ECF No. 14 at 4.) The ALJ recounted the podiatrist's numerous opinions and concluded that they were "unpersuasive as his extreme limitations are not only inconsistent with the evidence of record, but his degree of assigned limitations vary from opinion to opinion, finally concluding with the statement that he was unable to tell exactly how long the claimant was able to stand or walk." (Tr. at 24.) The ALJ had already explained earlier in her RFC assessment how she construed the totality of the evidence of record, noting that the podiatrist treated Claimant's foot pain conservatively and that she most recently used over-the-counter pain medications as needed despite her complaints that her pain was "gradually worsening." (*Id.* at 23.) She also reasoned that the neurologist's opinions were "unpersuasive as they are inconsistent with the evidence of record," elaborating,

> [The neurologist] stated that his assigned limitations were based upon lower extremity pain and imbalance. However, medical records indicate that the claimant's level of pain was relieved by over-the-counter Ibuprofen, which she did not even require on a daily basis. Moreover, during his own examination, [the neurologist] noted that sensation was only mildly reduced to vibration, and an EMG study was normal.

18

(*Id.* at 24–25 (internal citations omitted).) Put simply, the ALJ properly evaluated the podiatrist's and the neurologist's opinions by assessing their supportability and consistency and articulating his reasoning. The undersigned therefore **FINDS** no error.

### IV. CONCLUSION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Claimant's request to reverse the Commissioner's decision (ECF No. 14), **GRANT** the Commissioner's request to affirm his decision (ECF No. 15), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown. Copies of any objections shall be served on opposing parties and provided to Judge Volk.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals. 28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

ENTER: July 7, 2021

Dwane L. Tinsley
United States Magistrate Judge